CARPENTER, 3.
On June 28, 1916, Mrs. Elizabeth Bugbee filed with the -clerk of the common pleas court of Cuyahoga county the following petition, upon which an alternative writ was issued and due return of service of process made a
“Your petitioner, Mrs. Elizabeth Bugbee, mother and next friend of Oliver Bugbee, a minor, respectfully represents that said Oliver Bugbee is unlawfully restrained of his liberty by one Captain Oatman of-Company ‘C’ Engineers, Fifth Regiment; that said Oliver Bugbee is but seventeen (17) years of age, and that his parents have never consented to his enlistment in said Company ‘G.1 Wherefore your petitioner asks that a writ of habeas corpus may be granted and he may be discharged from such unlawful imprisonment.”
The return of Captain Harry C. Oatman admits that he is holding the said Oliver Bugbee as a soldier of Company “C” Corps of Engineers, National G-uard of the United States of America, and as a soldier of the United States and not otherwise, and also avers that he is such soldier and in that capacity has beeri ordered by the President of the United States into service and is now serving in obedience to the said order, and *309 as such has received allowance and equipment from the United States; and having produced the body of said Oliver Bugbee, claims that the state courts of Ohio are without jurisdiction, in the premises.
The following statement of facts were agreed upon and filed as a part of the record :
“ (1) That soldier is over 16 and under 18.
“ (2) That President’s call was June 18, 1916.
“ (3) Bugbee properly enlisted June 21, except as stated in (5).
“(4) That he has been on United States pay-roll since June 21, 1916, and has been serving since said day and has received the equipment and allowances of a soldier.
“(5) That mother’s signature on enlistment paper was. not written by her, which fact was unknown to enlisting officer who supposed she had signed same.
“ (6) That neither father nor mother has since consented to his enlistment.
“(7) That he is detained by Capt.-Harry C. Oatman as commanding officer Company C Corps of Engineers, as a soldier, and under charge of fraudulent enlistment.
• “ (8) That the soldier signed the new form of enlistment oath. ’ ’
Upon hearing, the court of common pleas found that said' Oliver Bugbee was being unlawfully detained and granted the writ, ordering that he be remanded to his parents. From this, judgment error is prosecuted to this court.
The real question presented may be stated thus: Whether any judicial officer of a state has jurisdiction to issue a writ-of habeas corpus or to continue proceedings under the writ when issued for the discharge of a person held under the authority or claim and color of authority of the United States by an officer of that Government. Under Art. 1, Sec. 8, of the constitution, congress has power to provide for organizing, arming and disciplining the militia, and for governing such part of them as may be employed in the service of the United! States.
In Art. 2. Sec. 2, of the constitution, the President shall *310 be commander-in-chief of the army and navy of the United States when called into actual service of the United States.
It is conceded that the President under- his constitutional authority did on the eighteenth day of June, 1916, three days before Bugbee’s enlistment, call into service of the United States the national guard of the state of Ohio. That Bugbee has been on the pay-roll since June twenty-first and has been serving since said day and has received the equipment and allowance of a soldier. In other words, he became on June 21,1916, and has since continued, not only de facto but de jure, a soldier, -subject to the laws and regulations governing the regular army, as provided in Sec. 101 of the amended federal militia law. This was Bugbee’s status when his mother-filed her petition. Notwithstanding he was under the statutory age when he enlisted, yet he could not avail himself of a writ of habeas corpus, for his contract is binding upon him as under a common law contract, and was not voidable.
“It is established law that a minor enlisted over 16 without his parent’s consent can not himself repudiate the contract and obtain his release from service on his own petition.”
See United States v. Gibbons, 24 Fed. 135; Davison, In re, 21 Fed. 618; Hearn, In re, 32 Fed. 141; Spencer, In re, 40 Fed. 149; Solomon v. Davenport, 87 Fed. 318 [30 C. C. A. 664].
It is contended by the petitioner that inasmuch as Bugbee, being under the statutory age of 18 and having enlisted in the service without the consent of his mother or father, his enlistment was not such as is contemplated by Section 1117 of the Bevised Statutes of the United States, as amended June 3, 1916. Said statute is as follows:
“No person under the age of 18 years shall be enlisted or mustered into the military service of the United States without the written consent of his parents or guardians; provided, that ■such minor has such parents or guardians entitled to his ' ■custody and control.”
And it is also contended that the mere publication of the President’s call was not effective until a time had been fixed when the national guard should respond. Even so, but the time was fixed and the call was made to become effective forth *311 with as evidenced by the President’s proclamation issued June 18, 1916, in these words, as written in the latter portion of the proclamation:
“I am, in consequence, instructed by the President to call into the service of the United States forthwith through you the following units of the organized militia and the national guard. ” • .
Returning, now, to the effectiveness of Sec. 1117 as it relates to the claim of the petition, that “the enlistment of Bug-bee was not such as contemplated by this statute.” It is true that this statute was passed for the benefit of the parents or guardians. It means simply that the government will not disturb the control of parent or guardian over his consent to invoke the aid of the court and secure the restoration of a minor to his or her control, but it gives no privilege to the minor. It evidently has refereneee to the national military forces raised and maintained by congress under its power to raise and support armies and to the national guard called as such by the President into the service of the United States for constitutional service. Sec. 101 of the federal militia law provides that—
“The national guard when called as such into the service of the United States shall, from the time they are required by the terms of the call to respond thereto, be subject to the laws an'd regulations governing the regular army, so far as such laws and regulations are applicable to officers and enlisted men whose permanent retention in the military service, either on the active list or on the retired list, is not contemplated by existing law.”
It will be observed that there is no provision in Sec. 1117, nor in any of the sections of this chapter, where authority is given to a state court to exercise jurisdiction in habeas corpus over this class of eases. Instituting such a suit is equivalent to suing the Government of the United States, which every tyro in the law knows can not be done without the government’s consent, and it must be manifest to any one that if the courts of the several states in the Union could exercise jurisdiction it would greatly impair the power of the national *312 government in the formation, organization and efficiency of its. armies, even to the point of destruction. That a state court does not have jurisdiction is manifest from the following excerpt in United States v. Tarbler, 80 U. S. 397 [20 L. Ed. 597]. Section 2 of the syllabus is as follows-
“A state judge has no jurisdiction to-issue a writ of habeas corpus, or to continue proceeding under the writ when issued for the discharge of a person held under the authority of' claim and color of the authority of the United States by an officer of that government. If, upon the application for the writ, it appears that a party alleged to be illegally restrained, of his liberty is held under the authority or claim and color of the authority of the United States by an officer of that government, the writ should be refused. If this fact does not thus appear the state judge had the right to inquire into the cause of imprisonment, and ascertain by what authority the person is held within the limit of the state; and it is the duty of the marshal or other officer having the custody of the prisoner to give, by a proper return, information in this respect. But after he has been fully apprised by the return that the party, is held by an officer of the United States by. the authority or claim and color of authority of the United States, he can proceed no further.” Winfield, Ex parte, 236 Fed. 552.
A majority of this court is of the opinion that it is without jurisdiction in the premises, and the petition in error is dismissed. The judgment of the common pleas is reversed and remanded for further proceedings.
Meals, J., concurs; Grant, J., dissents.